**DRUGS AND DRUG TESTING**

CONSTITUTIONAL LAW — SEARCH AND SEIZURE — GOVERNOR — EXECUTIVE ORDERS — BOARD OF PUBLIC WORKS — STATE-MANDATED DRUG TESTING PROGRAM BY PRIVATE EMPLOYERS

October 13, 1993

*Jillyn K. Schulze, Esquire*
*Director, Legal, Labor and Special Issues*
*Governor's Office*

You have requested our opinion on the authority of the State to require employers providing services on State-funded projects to test their employees for drugs. If the State has this authority, you have asked whether legislation is required or whether this authority may be exercised by executive order or by a regulation of the Board of Public Works. Finally, you have asked about the State's potential liability for a State-mandated drug testing program administered by private employers.

For the reasons stated below, we conclude that the State may require employers providing services on State-funded projects to have a drug testing program for their employees, within the limits of the Fourth Amendment. For employers having a contractual relationship with the State, this requirement may be imposed by a regulation of the Board of Public Works, but not by executive order. In the case of employers who do not have a contractual relationship with the State, this requirement may be imposed pursuant to legislation. Because employers would be acting on behalf of the State, their drug testing program would be subject to the same constitutional limits that apply to the State. The State itself should not be exposed to liability resulting from the acts of private employers.

# I

## Background

In 1988 Congress enacted legislation requiring federal contractors and the recipients of federal grants, including states, to meet certain requirements for a drug-free workplace. Drug Free Workplace Act of 1988, Pub. L. 100-690, Title V, Subtitle D, §§5151-5160, 41 U.S.C. §§701-707. The Governor subsequently issued an executive order that, in part, was intended to comply with this federal Act. Executive Order 01.01.1989.05. In 74 *Opinions of the Attorney General* 200 (1989), we concluded that this order was lawful in all respects.[1]

In November 1989, Governor Schaefer issued an executive order directing the Secretary of the Board of Public Works to prepare regulations, consistent with federal and State law, that would require the recipients of State funds to establish a drug- and alcohol-free workplace program. As authority for the proposed regulations, the order referred to the Board's statutory authority to control State procurement and to review certain State contracts or approve the disbursement of, grants, loans, and other funds. In instances where a recipient's funding was not subject to the Board's supervision, the administering executive agencies were directed to impose drug-free workplace requirements similar to those in the Board's regulations. Executive Order 01.01.1989.18.

The following year, the Board adopted drug- and alcohol-free workplace regulations for State contractors. COMAR §21.11.08.01 *et seq*. The statutory authority cited for these regulations was §§11-201 and 12-101 of the State Finance and Procurement Article, Maryland Code ("SF" Article). SF §11-201 defines the purposes of the Procurement Law, and SF §12-101 confers on the Board of Public Works authority to control procurement, set policy, and adopt regulations.

These Board regulations are limited in scope: They apply only to State contractors, not other recipients of State funds, and they do

---

[1] This executive order was subsequently rescinded and a new order on this matter was issued. Executive Order 01.01.1991.16.

not require employers to test their employees for drugs.[2]   Your questions concerning a potential State requirement that employers on State-funded projects have a drug testing program raise certain issues not implicated by the existing regulation.


# II

## Constitutional Considerations

In a recent case arising from Maryland, the Supreme Court observed that, under our federal system, the states possess sovereignty concurrent with that of the federal government, subject only to the limitations of the Supremacy Clause. *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).  Those powers not delegated to the United States by the federal constitution nor prohibited by it to the states are reserved to the states or the people by the Tenth Amendment.  *Cf.* Article 3 of the Maryland Declaration of Rights.  Unlike Congress, which may only exercise the power expressly or impliedly delegated to it, the General Assembly has plenary power to enact any law for any purpose of civil government, subject only to the limitations of the State and federal constitutions.  *Richards Furniture Corp. v. Board of County Commissioners*, 233 Md. 249, 257, 196 A.2d 621 (1963); *Salsburg v. State*, 201 Md. 212, 222-23, 94 A.2d 280 (1953), *aff'd* 346 U.S. 545 (1954); *Leonard v. Earle*, 155 Md. 252, 260, 141 A. 714 (1928); *Kenneweg v. Allegany County*, 102 Md. 119, 122-23, 62 A. 249 (1905).

The most significant constitutional limitation applicable to State legislation mandating drug testing by employers working on State-funded projects is the Fourth Amendment to the federal constitution.[3]   The   Fourth   Amendment,   which   prohibits

---

[2] These regulations apply to "units," a term that refers to executive branch agencies, with certain exceptions, but does not include the legislative and judicial branches.  *See* SF §§12-101 and 11-101(x), as amended by Chapter 477, Laws of Maryland 1993.

[3] In your letter, you did not suggest what consequences would follow from a positive drug test.  If the consequence were debarment of a contractor or recipient, we see no Due Process or Contract Clause objection so long as this consequence is established at the time the

(continued...)

"unreasonable searches and seizures," is binding on the states through the Due Process Clause of the federal constitution.[4] Although the prohibition does not ordinarily apply to private parties, the Fourth Amendment does apply "if the private party acted as an instrument or agent of the Government." *Skinner v. Railway Labor Executives' Association,* 489 U.S. 602, 614 (1989). Moreover, the procedures used in drug testing are deemed a search. 489 U.S. at 616-18. Thus, the drug testing program of a private employer, is subject to the limitations of the Fourth Amendment when the program is undertaken "by compulsion of sovereign authority" or with the government's "encouragement, endorsement, and participation ...." 489 U.S. at 614-16.

The general rule is that a search is reasonable only if a warrant based on probable cause has been issued. 489 U.S. at 619-20. In the case of "special needs," like the operation of government offices or prisons, the warrant requirement is deemed impractical. Nevertheless, even in these situations, the Fourth Amendment usually requires a showing of "individualized suspicion" before a search can be deemed constitutionally reasonable. 489 U.S. at 620-21 and 624. In *Skinner,* however, the Supreme Court concluded that a showing of individualized suspicion was unnecessary in testing railway employees for drugs and alcohol in some circumstances – for example, when there had been an accident. 489 U.S. at 609 and 633. In such circumstances, the compelling public interest in railroad safety outweighs the employees' privacy expectations. 489 U.S. at 619, 627, and 633. *See also National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 677 (1989).

In sum, the State could constitutionally require private employers who provide services to State-funded projects to test their

---

[3] (...continued)
contract or grant is awarded. The same is true of a termination of a contract or grant. However, other consequences mandated by the State, such as the disciplining or dismissal of employees, could raise constitutional or other legal issues – for example, under the Federal Rehabilitation Act or the Americans With Disabilities Act. *See* 74 *Opinions of the Attorney General* 200, 208-12 (1989). If a decision is made to implement a drug testing program, we would be glad to provide further advice about such matters at that time.

[4] Article 26 of the Declaration of Rights contains a similar clause.

employees for drugs. Because such employers would be acting on behalf of the State and would be subject to the Fourth Amendment, however, individualized suspicion of an employee's drug or alcohol use would generally be required. Random testing would be permissible only for employees in sensitive jobs. *See generally* 74 *Opinions of the Attorney General* 102 (1989).

## III

### Form of State Requirement

While the proposed drug testing by employers certainly could be mandated by legislation, you have asked whether this requirement could be imposed by executive order or regulations adopted by the Board of Public Works.

No statute, federal or State, presently authorizes the Governor to require a drug testing program by employers working on State-funded projects. In the absence of statutory authorization, an executive order may not regulate the conduct of private parties. 63 *Opinions of the Attorney General* 72, 75-6 (1963). *See also* 74 *Opinions of the Attorney General* 200, 205-6 (1989); 64 *Opinions of the Attorney General* 180, 181 (1979).[5]

SF §12-101 does authorize the Board of Public Works to adopt regulations requiring State contractors to have a drug testing program.[6] Because SF §12-101 concerns only the control of procurement and the setting of procurement policy, however, it could not serve as the basis for a regulation to require drug testing by grant or loan recipients or employers who provide services to them.

---

[5] By contrast, an executive order issued pursuant to statutory authorization has the force of law. *Maryland Classified Employees Ass'n v. Schaefer*, 325 Md. 19, 27 n.3, 599 A.2d. 91 (1991); 64 *Opinions of the Attorney General* at 183-84.

[6] Any such regulations would, of course, be subject to the Fourth Amendment limitations described in Part II above.

**IV**

**Potential Liability**

As to the State's potential liability for the State-mandated actions of employers, the Eleventh Amendment to the federal constitution bars suits against a state by citizens of other states as well as by its own citizens. This bar applies whether the relief sought is legal or equitable. *Papasan v. Allain*, 478 U.S. 265, 276 (1986). Although the Fourteenth Amendment allows Congress to abrogate the Eleventh Amendment, 42 U.S.C. §1983, which allows claims for constitutional violations, does not do so. *Hafer v. Melo,* 112 S.Ct. 358, 364 (1991); *Will v. Michigan Department of State Police*, 491 U.S. 58, 66 (1989). However, individuals acting on behalf of a state can be sued in their personal capacity for constitutional violations. *Melo*, 112 S.Ct. at 363-64. An important consideration in drafting legislation or a regulation of the Board of Public Works on employer drug testing, therefore, would be the limitations of the Fourth Amendment discussed in Part II above, as well as other potential federal causes of action depending on the particular procedures and consequences.

Although Maryland has waived sovereign immunity for torts, that liability is limited to the torts of "State personnel." *See* §12-101 of the State Government Article. The State's waiver does not extend to the torts of private employers. *See Rucker v. Harford County*, 316 Md. 275, 291 and 297-98, 558 A.2d 399 (1989).

**V**

**Conclusion**

In summary, it is our opinion that, subject to certain limitations, legislation could be enacted to require employers on State-funded projects to test their employees for drugs. Moreover, based on

current statutory authority and subject to certain limitations, the Board of Public Works could adopt a regulation requiring the State's contractors to have a drug testing program.

J. Joseph Curran, Jr.
*Attorney General*

Richard E. Israel
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*